# IN THE COURT OF APPEALS OF IOWA

No. 24-0293
Filed January 23, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JENNIFER ELAINE ARCHER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Page County, Justin R. Wyatt,

Judge.



        A defendant appeals from her convictions and sentences. **CONVICTIONS**

**AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**



        Francis Hurley, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.



        Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Jennifer Archer was caught on camera entering a neighbor's carport and trying to get into their garage. She was carrying a backpack and, in the words of the homeowner, "[c]asing the place out, looking for something to steal." A jury found Archer guilty of burglary in the third degree and attempted burglary in the third degree. She was sentenced to consecutive terms of imprisonment. Archer appeals her convictions and sentences, contesting the sufficiency of the evidence and the district court's failure to give reasons for the consecutive sentences.

I.    *Sufficiency of the Evidence*

In September 2023, James and Nancy Kodat were out of town when their security cameras alerted them that someone was on their property. The Kodats lived on a corner lot, with a large garage behind the house. They stored a Dodge Viper, about $20,000 of tools, and other belongings inside the garage. Under an overhang attached to the garage was a carport, where the Kodats parked their VW Bug. James sometimes worked in the garage with the door open. The garage faced a house across the street that the Kodats said was a "meth house" and "known drug den." They had seen Archer there before.

The Kodats received the alert about five minutes after they left home, but they didn't see it until later. Once they got home, the Kodats reviewed footage from security cameras installed around their property. During his testimony at trial, James described what he saw on the videos as they played for the jury:

> I seen the defendant walking across the street—out of the house across the street on Monroe and going towards the garage, and then she went over towards the garage and then went into the overhang, and then she was looking around to see if there—in my opinion looking around to see if somebody was watching or if

anybody was home, and then proceeded to go over and try the door. And then I watched her go across to the bug—there's a VW bug parked in the overhang, and she was looking inside. And then the camera didn't go all the way around. And then I heard like—what sounded to me like the door [to the car] was either trying to be opened or maybe she went around and opened it. I'm not sure.

Other footage captured what James believed was an attempt to access his locked garage. While Archer is out of frame, a faint rattling can be heard, which James identified as the "sound of trying to open the door" to the garage. The last video showed Archer leaving the carport and walking into the Kodats' yard. She looked around, turning her head to the right and left, before walking over to the Kodats' motorhome. The video ends with Archer standing behind the motorhome, which James testified lasted "a few minutes before she proceeded to walk down the alleyway." Nothing was stolen or missing from the Kodats' property.

The jury was instructed that to find Archer guilty of burglary in the third degree, the State was required to prove:

> 1. On or about the 14th day of September, 2023, the defendant entered a lean-to carport.
> 2. The carport was an occupied structure . . . .
> 3. The defendant did not have permission or authority to enter the carport.
> 4. The carport was not open to the public.
> 5. The defendant did so with the specific intent to commit a theft.

The court gave a similar marshaling instruction for attempted burglary in the third degree with respect to any other "building and/or vehicle."

Under these instructions, the jury found Archer guilty of both crimes. On appeal from those convictions, the entirety of Archer's argument is:

> In the present case, Ms. Archer was seen on video at the Kodat[s'] home. However, there is no evidence that a crime was committed. Therefore, Ms. Archer could not even be on the scene

> of a crime. There is no evidence of any theft. The video does not show Ms. Archer attempting to open a car door. Ms. Archer is simply there.
>
> The State's case is speculative, based on mere conjecture. The Kodats were motivated by concern about a neighbor they did not like.

(Citations to the record omitted.)

We review this challenge for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). In doing so, we view the "evidence in the light most favorable to the State" and draw all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted).

To start, we reject Archer's argument that to be found guilty of burglary or attempted burglary, something had to be stolen. The unchallenged jury instructions only required the jury to find that Archer entered or attempted to enter the designated occupied structures "with the specific intent to commit a theft." *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims."); *see also* Iowa Code § 713.1 (defining burglary); *State v. Ernst*, 954 N.W.2d 50, 56 (Iowa 2021) (stating a defendant does not have to complete a theft to be found guilty of attempted burglary). "[I]ntent to commit theft can 'reasonably be inferred from the evidence of surreptitious entry and other circumstances.'" *Ernst*, 954 N.W.2d at 55 (quoting *State v. Sangster*, 299 N.W.2d 661, 663 (Iowa 1980)); *see also State v. Oetken*, 613 N.W.2d 679, 686 (Iowa 2000) (en banc) ("An intent to commit theft may be inferred from an actual breaking and entering of a building which contains things of value."). We conclude from Archer's

on-camera behavior and the testimony of the homeowners at trial that a jury could reasonably infer she had the specific intent to commit a theft while at the Kodats' property. *See Ernst*, 954 N.W.2d at 56 (finding specific intent was satisfied when the defendant knew the homeowners would be gone when he entered the property).

As for Archer's claim that the videos do not show her "attempting to open a car door," the marshaling instruction for attempted burglary allowed the jury to find her guilty if she tried to enter a "building and/or vehicle." The first video played for the jury showed Archer approaching the door to the large garage and, in the shadow of the overhang of the carport, reaching for where the door handle would be. James Kodat testified that based on a rattling sound in the second video, which showed part of the carport, Archer was trying to open the door to the garage. Viewing this evidence in the light most favorable to the State, we conclude a rational trier of fact could find that Archer attempted to enter the garage. So Archer's challenge to the evidence on the State's alternate vehicle theory fails. *See* Iowa Code § 814.28 (2023) ("If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the . . . jury instruction is sufficient to sustain the verdict on at least one count.").

For these reasons, we affirm Archer's convictions for third-degree burglary and attempted burglary.

II.      *Consecutive Sentences*

The district court sentenced Archer to indeterminate terms of imprisonment of five years for burglary in the third degree and two years for attempted burglary

in the third degree. The court suspended the sentences but ordered them to run consecutively to one another and to a sentence imposed in another case. Archer claims the court abused its sentencing discretion because it failed to state reasons for imposing consecutive sentences. *See State v. McCalley*, 972 N.W.2d 672, 676 (Iowa 2022) (stating that while we "review sentences imposed in a criminal case for correction of errors at law," we will not reverse a sentence "[a]bsent 'an abuse of discretion or some defect in the sentencing procedure'" (citation omitted)).

Iowa Rule of Criminal Procedure 2.23(2)(g) requires the court to "particularly state the reason for imposition of any consecutive sentence." *See also State v. Hill*, 878 N.W.2d 269, 273 (Iowa 2016). The State suggests this requirement is relaxed when the consecutive sentences are suspended. We disagree. "[A]lthough the suspension of a sentence prevents or delays its execution, it does not alter its character as a sentence of confinement." *State v. Oliver*, 588 N.W.2d 412, 415 (Iowa 1998). The sentencing court must still "provide reasons for imposing consecutive terms"—even when the sentences are suspended. *State v. Collins*, No. 21-0638, 2022 WL 949747, at *2 (Iowa Ct. App. Mar. 30, 2022). The court failed to do so here.

After suspending the prison sentences, placing Archer on probation, and ordering her to reside at a residential correctional facility (RCF), the court stated:

> If she's unsuccessful with the RCF program, and the terms of probation are revoked, those three sentences will run consecutive to one another. And so she will have a chance to hopefully get the mental health substance abuse evaluations and treatment she needs. It sounds like she'll get that. She may have a better chance of getting what she needs. If she goes to the RCF and not prison, there's more options available, more resources available through the RCF for that.

The court gave no other reasons for Archer's sentences at the hearing. And in its written sentencing order, under the heading, "Consecutive/Concurrent," the court simply stated: "Defendant is advised by the Court of the reasons for imposing concurrent or consecutive sentences."[1] Nothing in that order, or the court's statements at the sentencing hearing, tied its reasoning to the imposition of consecutive sentences.

While a sentencing "court may rely on the same reasons for imposing a sentence of incarceration," we cannot "infer the same reasons applied as part of an overall sentencing scheme." *Hill*, 878 N.W.2d at 275. Because the court did not particularly state its reasons for imposing consecutive sentences, we vacate Archer's sentences and remand for resentencing. *See State v. Duffield*, ___ N.W.3d ___ , No. 23-0786, 2025 WL 223425, at *3 (Iowa Jan. 17, 2025) ("Vacating the defendant's sentence and remanding the case for plenary resentencing should be the presumed remedy in cases involving . . . the district court's failure to articulate its reasons for imposing a carceral sentence.").

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**

---

[1] A different part of the order listed the following "reasons for sentencing": "Defendant's need for and likelihood to achieve rehabilitation"; "[s]ociety's need for protection from further offenses by Defendant and others"; and "[t]he plea agreement," although there was no plea agreement.